# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ADVANCED MEMORY TECHNOLOGIES, LLC, | Civil Action No. 2:24-CV-1078-JRG-RSP |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| SK HYNIX INC., | |
| Defendant. | |

**PLAINTIFF ADVANCED MEMORY TECHNOLOGIES, LLC'S OPPOSITION TO DEFENDANT SK HYNIX INC.'S PARTIAL MOTION TO DISMISS (DKT. NO. 41)**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 1

LEGAL STANDARD............................................................................................... 2

ARGUMENT ........................................................................................................... 3

    A.    The Court Should Deny SK hynix's Motion to Dismiss AMT's Claims for Willful Infringement ........................................................ 3

        1.    AMT Adequately Alleges Pre-Suit Knowledge ................................. 3

        2.    AMT Adequately Alleges Post-Suit Knowledge to Support Post-Suit Willful Infringement................................. 6

        3.    AMT Adequately Alleges Intentional and Deliberate Conduct .................................................................................. 7

    A.    The Court Should Deny SK hynix's Motion to Dismiss AMT's Indirect Infringement Allegations.................................................. 8

        1.    AMT Adequately Alleges Induced Infringement ............................... 8

        2.    AMT Adequately Alleges Contributory Infringement ..................... 12

CONCLUSION........................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Coding Techs. LLC v. Google LLC*,
  759 F. Supp. 3d 755 (E.D. Tex. 2024)...................................................................................1

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
  No. 2:21-CV-00172-JRG, 2022 WL 610796 (E.D. Tex. Jan. 24, 2022) ......................7, 9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................3, 13

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*,
  No. 2:21-CV-00034-JRG, 2021 WL 12310942 (E.D. Tex. Nov. 18, 2021)...................4, 9, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................13

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012).................................................................................14

*BillJCo, LLC v. Cisco Sys., Inc.*,
  No. 2:21-CV-00181-JRG, 2021 WL 6618529 (E.D. Tex. Nov. 30, 2021).........................2, 11

*Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*,
  No. 2:15-cv-1274-JRG, 2016 WL 4778699 (E.D. Tex. Aug. 19, 2016), *report
  and recommendation adopted*, 2016 WL 4771291 (E.D. Tex. Sept. 13, 2016) ...............4, 5, 6

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ..................10, 14

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
  No. 2:22-CV-00343-JRG-RSP, 2024 WL 2014047 (E.D. Tex. Mar. 21, 2024),
  *report and recommendation adopted*, 2024 WL 2428901 (E.D. Tex. May 22,
  2024) .........................................................................................................................8

*Dialect, LLC v. Bank of Am.*,
  No. 2:24-cv-00207-JRG, 2024 WL 4980794 (E.D. Tex. Dec. 4, 2024).........................7, 8, 9

*Fractus, S.A. v. TCL Corp.*,
  No. 2:20-cv-00097-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021)............................7, 8

*InMotion Imagery Techs. v. Brain Damage Films*,
  No. 2:11-CV-414-JRG, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012)..................................14

*Integrated Tech. Sys., Inc. v. First Internet Bank of Ind.*,
    No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017),
    *report and recommendation adopted*, 2017 WL 617673 (E.D. Tex. Feb. 15,
    2017), *aff'd*, 712 F. App'x 1007 (Fed. Cir. 2018) ...................................................4

*KIPB LLC v. Samsung Elecs. Co., Ltd.*,
    No. 2:19-CV-00056-JRG-RSP, 2020 WL 1500062, (E.D. Tex. Mar. 9, 2020)
    *report and recommendation adopted*, 2020 WL 1495725 (E.D. Tex. Mar. 27,
    2020). ...........................................................................................................13

*Maxell Ltd. v. Apple Inc.*,
    No. 5:19-CV-00036-RWS, 2019 WL 7905455 (E.D. Tex. Oct. 23, 2019) .........................5, 9

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007).........................................................................3

*Motiva Pats., LLC v. Sony Corp.*,
    408 F. Supp. 3d 819 (E.D. Tex. 2019) ............................................................3, 12

*NetSocket, Inc. v. Cisco Sys., Inc.*,
    No. 2:22-CV-00172-JRG, 2023 WL 11987208 (E.D. Tex. Aug. 25, 2023)........................11

*Norman IP Holdings, LLC v. Chrysler Grp. LLC*,
    No. 6:13-CV-278-LED-JDL, 2014 WL 12789842 (E.D. Tex. Mar. 5, 2014)......................10

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.*,
    No. 2:16-CV-1032-JRG, 2017 WL 8727249 (E.D. Tex. Sept. 22, 2017) ..............................7

*Stragent, LLC v. BMW of N. Am.*, LLC,
    No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017),
    *report and recommendation adopted*, 2017 WL 2832613 (E.D. Tex. Mar. 27,
    2017). ..........................................................................................................10

*In re Taasera Licensing LLC, Pat. Litig.*,
    No. 2:22-CV-00063-JRG, 2023 WL 2465584 (E.D. Tex. Mar. 10, 2023)..........................11

*Touchstream Techs., Inc. v. Altice USA, Inc.*,
    No. 2:23-CV-00060-JRG, 2024 WL 1117930 (E.D. Tex. Mar. 14, 2024)..............................7

*Traxcell Techs., LLC v. Samsung Elecs. Am., Inc.*,
    No. 2:17-CV-00042-RWS-RSP, 2017 WL 10647378 (E.D. Tex. Sept. 12,
    2017), *report and recommendation adopted*, 2017 WL 10647377, at *1 (E.D.
    Tex. Oct. 11, 2017) .............................................................................................4

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
    No. 2:16-cv-642-JRG, 2017 WL 11632209 (E.D. Tex. May 16, 2017)..................................3

**Statutes**

35 U.S.C. 102(a)(1) ................................................................................................................. 6

35 U.S.C. § 271(a) ................................................................................................................... 1

35 U.S.C. § 271(b) ................................................................................................................... 2

35 U.S.C. § 287(a) ................................................................................................................... 8

**Rules**

Rule 12(b)(6) ....................................................................................................................... 2, 14

## INTRODUCTION

A "plaintiff is not required to prove its case at the pleading stage." *Advanced Coding Techs. LLC v. Google LLC*, 759 F. Supp. 3d 755, 757–58 (E.D. Tex. 2024) (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). Despite this well-established principle, SK hynix Inc. ("SK hynix") moves for partial dismissal of Advanced Memory Technologies, LLC's ("AMT") well-pled allegations of willful, induced, and contributory infringement. The Court should deny SK hynix's motion because it is inconsistent with this Court's pleading standards, because AMT alleges sufficient facts to give rise to an inference of the challenged forms of infringement, and because SK hynix seeks to import an improperly heightened pleading standard where it does not belong.

## BACKGROUND

AMT is the assignee of United States Patent No. 7,777,557 (the "'557 Patent"), United States Patent No. 7,920,018 (the "'018 Patent"), United States Patent No. 7,969,231 (the "'231 Patent"), United States Patent No. 8,593,888 (the "'888 Patent"), and United States Patent No. 8,400,835 ("the '835 Patent") (collectively, the "Asserted Patents"). FAC ¶¶ 40, 44, 49, 53, 57. The '557, '018, and '231 Patents generally claim structures for booster, or internal voltage generating, circuits, FAC ¶¶ 41, 46, 50, and the '835 and '888 Patents claim a structure and system, respectively, relating to programming cells in memory devices. FAC ¶ 54, 58.

On December 30, 2024, AMT commenced this lawsuit against SK hynix for infringement of the '557, '018, '231, and '888 Patents. ECF No. 1. AMT filed a first amended complaint ("FAC") on April 2, 2025, in which it alleged additional claims for the '835 Patent. ECF No. 25.

AMT alleges that SK hynix directly infringes the asserted patents under 35 U.S.C. §§ 271(a) and/or 271(g) by making, using, offering to sell, selling, and/or importing in or into the United States certain semiconductor memory devices. FAC ¶¶ 67, 90, 113, 139, 160. AMT also

alleges that SK hynix is liable for indirect infringement by inducing infringement and contributorily infringing the Asserted Patents. SK hynix induces infringement of the asserted patents, in violation of 35 U.S.C. § 271(b), by actively encouraging its customers to directly infringe the asserted patents by using, selling, offering for sale, and/or importing products incorporating SK hynix's infringing memory devices. FAC ¶¶ 79, 102, 127, 151, 174. SK hynix also actively advertises and promotes its infringing memory devices to U.S. customers to attract new business, and knows that its customers will incorporate the infringing memory devices into their own products (such as smartphones, laptops, cars, and other consumer electronics), which will be used, offered for sale, sold, and/or imported in the U.S. FAC ¶¶ 14–15, 79, 102, 127, 151, 174.

The FAC further alleges SK hynix contributorily infringes the Asserted Patents because it sells and/or offers for sale its design and manufacturing services for infringing products, while knowing that the infringing semiconductor devices it manufactures are especially made or adapted for use in its customers' own products, which directly infringe the asserted patents. FAC ¶¶ 84, 107, 133, 156, 179.

Lastly, AMT alleges that SK hynix has and continues to willfully engage in direct and indirect infringement of the patents. FAC ¶¶ 86–88, 109–11, 135–37, 158–60, 180–81.

On June 16, 2025, SK hynix moved to dismiss AMT's claims for willful and indirect infringement. ECF No. 41 ("Mot."). SK hynix's motion does not challenge the sufficiency of AMT's allegations of direct infringement. *See generally id.*

## LEGAL STANDARD

"In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-CV-00181-JRG, 2021 WL 6618529

(E.D. Tex. Nov. 30, 2021) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)).[1]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "After drawing every reasonable inference in favor of the plaintiff, 'the court must then decide whether those facts state a claim for relief that is plausible on its face.'" *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 827 (E.D. Tex. 2019) (quoting *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016)). "[T]he plausibility standard is met when the complaint 'pleads enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' in support of the alleged claims." *Id.* (quoting *Twombly*, 550 U.S. at 556). "A plaintiff need not, in its pleading, prove all aspects of its claims, or even make those claims probable." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:16-cv-642-JRG, 2017 WL 11632209, at *3 (E.D. Tex. May 16, 2017). "Thus, particularly where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Pats., LLC*, 408 F. Supp. at 827.

## ARGUMENT

### A. The Court Should Deny SK hynix's Motion to Dismiss AMT's Claims for Willful Infringement

#### 1. AMT Adequately Alleges Pre-Suit Knowledge

---

[1] In a motion to dismiss for failure to state a claim, the Federal Circuit applies the law of the regional circuit. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007) (explaining that, because "[a] motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law," the court "appl[ies] the law of the regional circuit" on appeal).

AMT has pled a sufficient factual basis for alleging pre-suit knowledge of the '557, '018, and '231 Patents. During the prosecution of SK hynix's own patents, the Patent Office cited the applications preceding the '557, '018, and '231 Patents as prior art. Critically, every one of those notifications to SK hynix were made ***after*** those applications received a notice of allowance and the '557, '018, and '231 Patents were issued—a key fact that SK hynix ignores.[2]

Contrary to SK hynix's argument, there is no "per se rule that knowledge of a patent application can never be enough to plead pre-suit knowledge." *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, No. 2:21-CV-00034-JRG, 2021 WL 12310942, at *3 (E.D. Tex. Nov. 18, 2021). Indeed, this Court has held that citations to an asserted patent's application in patent prosecutions involving the accused infringer are sufficient to establish pre-suit knowledge. *See, e.g.*, *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 2:15-cv-1274-JRG, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016), *report and recommendation adopted*, 2016 WL 4771291 (E.D. Tex. Sept. 13, 2016) (explaining that it is "plausible to infer" the defendant investigated the cited patent application and "discovered" that it had issued as the asserted patent"); *Traxcell Techs., LLC v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00042-RWS-RSP, 2017 WL 10647378 (E.D. Tex. Sept. 12, 2017), *report and recommendation adopted*, 2017 WL 10647377, at *1 (E.D. Tex. Oct. 11, 2017) (finding pre-suit knowledge sufficient for induced infringement where "the patent's underlying application was cited to [defendant] by the Patent Office during prosecution of one of [defendant]'s patent applications").

Moreover, the caselaw cited by SK hynix recognizes there are circumstances "where a party's exposure to a patent application may give rise to knowledge of a later issued patent."

---

[2] The Court may take judicial notice of the prosecution history for the asserted patents. *See* No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195, at *2 (E.D. Tex. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 617673 (E.D. Tex. Feb. 15, 2017), *aff'd*, 712 F. App'x 1007 (Fed. Cir. 2018).

*Maxell Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2019 WL 7905455, at *5 (E.D. Tex. Oct. 23, 2019). One such circumstance identified by the *Maxell* court—and ignored by SK hynix—is when "an accused infringer receives notice of a patent application for which a notice of allowance has been issued." *Id.* (quoting *Blitzsafe Tex.*, 2016 WL 4778699, at *6). In that case, the "accused infringer may well be found to have knowledge of the claims when they issue." *Id.* (quoting *Blitzsafe Tex.*, 2016 WL 4778699, at *6).

Those are the circumstances present here. SK hynix acknowledges that it had knowledge of the application preceding the '557 Patent since at least February 3, 2022. *See* Mot. at 8–9. But the '557 Patent was issued more than ***ten years prior*** on August 17, 2010. *See* ECF No. 25 at Ex. A. And the '018 Patent—which is a divisional of the application preceding the '557 Patent—also was issued more than ten years prior to the date SK hynix received notice. *See* ECF. No. 25 at Ex. B (issued on April 5, 2011). Similarly, for the '231 Patent, SK hynix acknowledges that it had knowledge of the application preceding it since at least June 17, 2016, *see* Mot. at 9, but the '231 Patent issued five years earlier, *see* ECF No. 25 at Ex. C. Thus, not only did SK hynix have actual knowledge of the applications preceding the '557, '018, and '231 Patents, that knowledge was well after those patents were issued. So even under the caselaw SK hynix cites, AMT's allegations are sufficient to allege pre-suit knowledge of '557, '018, and '231 Patents. *See Maxell*, 2019 WL 7905455, at *5; *see also Blitzsafe Tex.*, 2016 WL 4778699, at *6.

While the caselaw firmly establishes that AMT's allegations are sufficient to demonstrate pre-suit knowledge, the circumstances behind SK hynix's knowledge make it even more plausible. The examiner's lists of references were accompanied by a non-final rejection of SK hynix's patents. *See* Exh. A (Non-Final Rejection of SK hynix Application 17/461,597 (Feb. 3, 2022)), Exh. B (Non-Final Rejection of SK hynix Application 14/698,542 (June 17, 2016)). In the case of the '557 and '018 Patents (for which AMT alleges pre-suit knowledge on the basis of an

application citation in SK hynix's application 17/461,597), for example, the examiner explained the decision was based in part on the very patent application SK hynix claims is insufficient to infer knowledge. *See* Exh. A, at 13 ("Claims(s) 15–18 is/are rejected under 35 U.S.C. 102(a)(1) as being anticipated by Yamahira (USPAPN 2008/0169864)."). Given that SK hynix was prosecuting its own patents, it can be inferred—especially at this stage of the proceeding—that SK hynix and its agents would have investigated the cited references, seen that they were ultimately allowed, and reviewed the patents that were issued years prior. Indeed, that is why courts find that notice of a patent application after that application was allowed is sufficient to show pre-suit knowledge. As the court in *Blitzsafe* noted, "the law does not reward willful blindness." 2016 WL 4778699, at *6 ("Thus, the Court finds it is plausible to infer that when [defendant] investigated the Marlowe Application in 2010, it discovered that the Marlowe Application had issued as the [asserted] patent in 2009."). That plausible inference also undermines SK hynix's ploy to compare the claims in the '864 application to those ultimately issued in the '557 Patent—an argument that amounts to nothing more than a red herring.

Regarding the '888 and '835 Patents, AMT does not allege pre-suit willful infringement. Contrary to SK hynix's arguments, *see* Mot. at 8, AMT only alleges post-suit willful infringement as to those two patents. As a result, the Court should deny SK hynix's motion as moot regarding pre-suit willful infringement of the '888 and '835 Patents.

> **2.    AMT Adequately Alleges Post-Suit Knowledge to Support Post-Suit Willful Infringement**

AMT has also alleged facts to plausibly demonstrate that SK hynix has sufficient post-suit knowledge for willful infringement. For the '888 and '835 patents—for which AMT does not allege pre-suit knowledge—AMT alleges knowledge since at least the filing of its complaints against SK hynix. FAC ¶ 157 (for the '888 Patent, knowledge "since the filing of the initial

complaint in this case (Dkt. No. 1)"); ¶ 180 (for the '835 Patent, knowledge "since the filing of this complaint"). And for the other three patents—the '557, '018, and '231—AMT alleges in the alternative that, even if SK hynix lacked pre-suit knowledge, it has had knowledge of these patents "since the filing of the initial complaint in this case." FAC ¶¶ 87, 110, 136.

The law in this District is clear: "allegations that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint are sufficient to at least state a claim for post-suit willful infringement." *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-00172-JRG, 2022 WL 610796, at *6 (E.D. Tex. Jan. 24, 2022); *see also id.* (citing *Blitzsafe*, 2016 4778699, at *6–7, for the proposition "that a complaint stated a claim for pre-suit willful infringement based on knowledge acquired via PTO filings and separately stated a claim for post-suit willful infringement based on the defendant's continued alleged infringement after suit was filed"); *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-CV-1032-JRG, 2017 WL 8727249, at *6 (E.D. Tex. Sept. 22, 2017) (citing *Blitzsafe* for the same proposition).

### 3.     AMT Adequately Alleges Intentional and Deliberate Conduct

SK hynix's remaining arguments about willful infringement further contradict well-established caselaw. Citing a single case from this District—*Fractus*—SK hynix claims the complaint fails to plead "culpable conduct." Mot.  at 9–10 (quoting *Fractus, S.A. v. TCL Corp.*, No. 2:20-cv-00097-JRG, 2021 WL 2483155, at *4 (E.D. Tex. June 2, 2021)). But an abundance of cases since *Fractus* establish that "the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Arigna Tech. Ltd.*, 2022 WL 610796, at *6 (quoting *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)); *see also Dialect, LLC v. Bank of Am.*, No. 2:24-cv-00207-JRG, 2024 WL 4980794, at *4 (E.D. Tex. Dec. 4, 2024) (collecting cases rejecting *Fractus*'s standard); *Touchstream Techs., Inc. v. Altice USA, Inc.*, No. 2:23-CV-00060-JRG, 2024 WL 1117930, at *3 (E.D. Tex. Mar. 14, 2024)

("[T]his Court has routinely rejected [arguments] that a plaintiff must allege facts raising a plausible inference of the egregious behavior required under *Halo*.") (cleaned up). Indeed, this Court has recognized that the *Fractus* decision "predates this Court's decisions rejecting arguments that the plaintiff must allege facts raising a plausible inference of egregious or culpable conduct at the 12(b)(6) stage." *Dialect*, 2024 WL 4980794, at *4.

SK hynix's suggestion that the FAC is deficient because, even if AMT pled SK hynix's knowledge of the Asserted Patents it did not plead SK hynix's knowledge of *infringement*, is misplaced. Citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994), SK hynix claims that "AMT pleads no facts to show that, prior to this lawsuit, SK hynix knew of the alleged infringement." Mot. at 9. That is incorrect. The sentence SK hynix selectively truncates makes clear it is about 35 U.S.C. § 287(a), which requires marking or, in the alternative, "proof that the infringer was notified of the *infringement*." (emphasis added). "Marking is a very different framework than willful infringement." *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-00343-JRG-RSP, 2024 WL 2014047, at *2 (E.D. Tex. Mar. 21, 2024), *report and recommendation adopted*, 2024 WL 2428901 (E.D. Tex. May 22, 2024) (citing *Amsted* in its explanation of why defendant was "materially incorrect" to borrow marking concepts in its discussion of willful infringement). In any event, SK hynix does not challenge AMT's § 287(a) allegations, which are sufficient to state a claim. FAC ¶¶ 43, 48, 52, 56, 60.

## A. The Court Should Deny SK hynix's Motion to Dismiss AMT's Indirect Infringement Allegations

### 1. AMT Adequately Alleges Induced Infringement

"To state a claim for induced infringement, a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement." *Arigna Tech. Ltd.*, 2022 WL

610796, at *4. Here, AMT alleges that SK hynix induces direct infringement by its customers, including Dell, NVIDIA, Microsoft, and AMD, by manufacturing infringing memory devices that SK hynix specifically intends for some customers to use and other customers to incorporate into a range of consumer electronics, including smart phones, servers, computers, tablets, cars, and more. FAC ¶¶ 10, 13, 20, 21, 24–26. As alleged in the complaint, SK hynix actively encourages and supports its customers' efforts to sell use, sell, and/or import their products after the infringing memory devices have been incorporated. FAC ¶¶ 13, 33; *Barkan Wireless IP*, 2021 WL 12310942, at *3 (finding induced infringement where the defendant was "selling infringing products and showing customers how to use those products"). On top of that, SK hynix actively assists its customers with the infringing memory devices to ensure their successful integration into its customers' infringing products. FAC ¶¶ 12, 22, 23; *see Dialect*, 2024 WL 4980794, at *5 ("'Active steps includ[ing] advertising an infringing use, instructing how to engage in an infringing use, and assisting in performing an infringing use' are sufficient to establish the intent necessary for an inducement claim." (cleaned up) (quoting *Motiva Pats.*, 408 F. Supp. 3d at 828)); *see also Maxell*, 2019 WL 7905455, at *3 ("Advertising the benefits of the accused functionalities gives rise to a reasonable inference that [the defendant] intended to induce its customers to infringe the patent.").

AMT also advertises its infringing technology to customers: SK hynix staff tout the specifications and features of the infringing memory devices and tailor them to customers' needs so that they can more seamlessly be incorporated into customers' products. FAC ¶¶ 79, 102, 127, 151, 174. Contrary to SK hynix's arguments, AMT alleges that SK hynix has touted specific applications of infringing memory products, such as for artificial intelligence, both at in-person industry events and in online advertising. FAC ¶ 15 (screenshot of tweet by @SKhynix describing showcase of "latest AI memory tech" at Dell event).

SK hynix's arguments to the contrary are premised on caselaw involving fundamentally

different technology and allegations. In *Core Wireless* and *Stragent*, the plaintiff's induced infringement allegations were insufficient because it failed to allege how the defendant's instructions "direct[ed] customers to use those products in an infringing manner." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at \*4 (E.D. Tex. Aug. 14, 2015); *see Stragent, LLC v. BMW of N. Am.*, LLC, No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697, at \*9 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017). In this case—as explained below with respect to contributory infringement—the nature of memory devices means that instructing customers how to use the devices necessarily involves instructing infringement, and AMT's allegations regarding the Asserted Patents provide those "[f]urther facts" necessary to show how instructions lead to direct infringement. *Norman IP Holdings, LLC v. Chrysler Grp. LLC*, No. 6:13-CV-278-LED-JDL, 2014 WL 12789842, at \*3 (E.D. Tex. Mar. 5, 2014)

By actively encouraging customers to purchase and use SK hynix's infringing memory devices, while knowing that these customers will commit direct acts of infringement, SK hynix induces infringement. AMT alleges sufficient facts to establish a plausible inference that SK hynix specifically intends its customers "to commit acts that it knew constituted infringement." *Core Wireless*, 2015 WL 4910427, at \*4.

Much of SK hynix's arguments regarding induced infringement parrot its earlier claims regarding pre-suit knowledge of the Asserted Patents. But "this Court has long recognized that failing to allege pre-suit knowledge of the patent is not an adequate basis upon which to dismiss indirect infringement claims." *Arigna Tech. Ltd.*, 2022 WL 610796, at \*4 (E.D. Tex. Jan. 24, 2022) (citation omitted) (collecting cases). Moreover, in this District, it is "premature" to distinguish between pre- and post-suit conduct for inducement infringement allegations at the pleading stage. *NetSocket, Inc. v. Cisco Sys., Inc.*, No. 2:22-CV-00172-JRG, 2023 WL 11987208, at \*2 (E.D. Tex.

Aug. 25, 2023) (denying motion to dismiss pre-suit induced infringement claims where it was undisputed that the defendant had knowledge as of the filing of the complaint and plaintiff alleged pre-suit knowledge of the asserted patents); *In re Taasera Licensing LLC, Pat. Litig.*, No. 2:22-CV-00063-JRG, 2023 WL 2465584, at *3 (E.D. Tex. Mar. 10, 2023) (denying motion to dismiss pre-suit induced infringement claims where parties disputed legal adequacy of plaintiff's allegations of pre-suit knowledge of the asserted patents); *BillJCo, LLC*, 2021 WL 6618529, at *6 ("[I]t would be premature at this early stage in the proceedings to distinguish between pre-suit and post-filing conduct for the purposes of induced infringement when it cannot be disputed that Plaintiff '*does* sufficiently plead that the Defendants had knowledge of the Asserted Patents for at least some time during the infringement period.'" (emphasis in original) (cleaned up) (quoting *Lochner Techs., LLC v. AT Labs Inc.*, No. 2:11-cv-242-JRG, 2012 WL 2595288, at *3 (E.D. Tex. July 5, 2012))).

In any event, those arguments fail for the same reasons discussed above. SK hynix had pre-suit knowledge of the '557, '018, and '231 Patents in prosecuting its own patents. And while AMT does not allege pre-suit knowledge of the '888 and '835 Patents, that has no bearing on AMT's claims of post-suit induced infringement.

SK hynix further claims that AMT's pre-suit inducement claims fail because AMT does not specifically allege SK hynix had pre-suit knowledge of its customers' direct infringement. Mot. at 12. But SK hynix does not cite a single case to support its argument that this is an independent basis for dismissal of pre-suit induced infringement claims. *See* Mot. at 11. Furthermore, AMT's allegations regarding SK hynix's pre-suit knowledge of the patents, taken together with AMT's allegations that SK hynix advertised its infringing memory products to customers, provided technical and operational support to customers regarding the infringing products, and knew its customers' products would be sold, offered for sale, and/or imported into the United States, all

support a reasonable inference that SK hynix knew its customers' acts constituted direct infringement of the asserted patents.

### 2.     AMT Adequately Alleges Contributory Infringement

With respect to contributory infringement, SK hynix similarly divines a heightened legal standard for pre-suit knowledge without any legal support. SK hynix claims that AMT failed to allege that SK hynix had knowledge that its customers' acts constituted direct infringement, but it cites no law for this standard. *See* Mot. at 13. In any event, as with induced infringement, AMT's allegations regarding SK hynix's pre-suit knowledge of the patents, taken together with AMT's allegations that SK hynix advertised its infringing memory products to customers, provided technical and operational support to customers regarding the infringing products, and knew its customers' products would be sold, offered for sale, and/or imported into the United States, all support a reasonable inference that SK hynix knew its customers' acts constituted direct infringement of the asserted patents.

But even if that were not enough, AMT's allegations that the accused products have no substantial noninfringing uses are well-pleaded, providing an independent basis for denying SK hynix's motion to dismiss AMT's pre-suit contributory infringement claims. As this Court has previously explained, "[f]or purposes of a motion to dismiss under 12(b)(6), a well-pled allegation that an accused product (or its component) has 'no substantial noninfringing uses' is independently sufficient to plead the knowledge element of contributory infringement." *Motiva Pats.*, 408 F. Supp. 3d at 835.

All of the products AMT accuses of infringing the patents are memory devices using either NAND flash memory or DRAM memory. FAC ¶ 61. AMT also alleges that the accused products necessarily infringe the Asserted Patents because they are memory devices whose entire operation depends on performing the memory functions that the Asserted Patents teach. With respect to the

'557, '018, and '231 Patents, which claim a structure of a booster/internal voltage generating circuit, FAC ¶¶ 42, 46, 50 the Complaint alleges that "memory devices *rely* on booster circuits, which are a fundamental design requirement for all Accused Flash Memory modules," in order "[t]o achieve the higher voltages *required* for programming, wordline and eras operations." FAC ¶ 76, 100, 121 (emphases added). For the '888 Patent, the Complaint explains how the patent is practiced by "erasing and writing memory contents in a memory cell using an electric signal and matching the elements of Claim 1." FAC ¶ 149. Similarly, for the '835 Patent, the Complaint alleges that the patent is practiced by a memory device "in which a plurality of non-volatile memory cells can be simultaneously written using a plurality of bit lines matching the elements of Claim 1." FAC ¶ 172. To put it differently, all the Asserted Patents relate to fundamental operations and structures in memory devices. Because all of the accused products are memory devices, AMT's allegations that the accused products "are not staple articles nor a commodity of commerce suitable for substantial non-infringing use" are well-pled. FAC ¶¶ 84, 107, 133, 156, 179.

As described in the patents attached to AMT's complaint, the patented technologies are fundamental to the implementation and function of memory devices, without which the accused semiconductor devices cannot function. AMT's allegations, taken as true, support a plausible inference that SK hynix's infringing memory devices have no substantial non-infringing uses. *See, e.g.*, *Barkan Wireless IP Holdings, L.P.*, 2021 WL 12310942, at *4 (finding allegation that "the accused products 'are designed for a use that is both patented and infringing, and that has no substantial non-infringing uses' . . . sufficient to support a plausible claim for relief under *Twombly* and *Iqbal*"); *KIPB LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-CV-00056-JRG-RSP, 2020 WL 1500062, at *3 (E.D. Tex. Mar. 9, 2020) (finding sufficient plaintiff's allegations that chips "are especially made to design and specification" and "are not staple products or commodities with substantial noninfringing use"), *report and recommendation adopted*, 2020 WL 1495725 (E.D.

Tex. Mar. 27, 2020).

Furthermore, AMT's contributory infringement allegations are nothing like those rejected in *Bill of Lading*, where the court explained that the plaintiff's *own complaint showed* the accused products were capable of non-infringing use. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012). And, unlike the plaintiffs in *Core Wireless* and *InMotion Imagery Technologies*, AMT identifies the accused products sold by SK hynix, alleges that those products have no substantial non-infringing uses, and explains why that is the case. *Core Wireless*, 2015 WL 4910427, at *5; *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *3–4 (E.D. Tex. Aug. 10, 2012). The Court should therefore deny SK hynix's motion to dismiss AMT's contributory infringement claims.

## <u>CONCLUSION</u>

The Court should deny SK hynix's partial Rule 12(b)(6) motion to dismiss AMT's claims for willful, induced, and contributory infringement. To the extent the Court finds merit in any of SK hynix's arguments, AMT respectfully requests that any partial dismissal be without prejudice such that AMT may amend its complaint following discovery from SK hynix.

Date: June 30, 2025

Respectfully submitted,

*/s/ Justin Nelson*

Justin A. Nelson – Lead Counsel
Texas State Bar No. 24034766
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jnelson@susmangodfrey.com

Kalpana Srinivasan
California State Bar No. 237460
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400

Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com

Ian M. Gore
Washington State Bar No. 54519
Kemper Diehl
Washington State Bar No. 53212
Bianca Rey
Washington State Bar No. 62422
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
igore@susmangodfrey.com
kdiehl@susmangodfrey.com
brey@susmangodfrey.com

Ravi Bhalla
New York State Bar No. 5748223
Andrew Nassar
New York State Bar No. 6162226
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
rbhalla@susmangodfrey.com
anassar@susmangodfrey.com

*Of Counsel:*
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea L. Fair
Texas State Bar No. 24078488
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Fax: (903) 757-2323
claire@millerfairhenry.com
andrea@millerfairhenry.com

*Attorneys for Plaintiff AMT*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on June 30, 2025.

*/s/ Justin Nelson*
Justin A. Nelson