# EXHIBIT O

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

---

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

---

SK HYNIX INC.,

Petitioner,

v.

ADVANCED MEMORY TECHNOLOGIES, LLC,

Patent Owner.

---

Case No. IPR2025-01449

U.S. Patent No. 8,593,888

---

# PETITION FOR *INTER PARTES* REVIEW OF U.S. PATENT NO. 8,593,888

## IV. PERSON OF ORDINARY SKILL

A person of ordinary skill in the art at the time of the '888 Patent ("POSITA") would have at least a Bachelor of Science in electrical engineering, computer engineering, or similar fields with courses in integrated circuit design and at least two years of experience in the field of integrated circuit design for memories. More education can supplement for less experience, and vice versa. EX-1003, ¶60. Petitioner's expert, Dr. Khatri, exceeded this level by the priority date. *Id.* ¶¶4-20, 61.

## V. CLAIM CONSTRUCTION

Claim 5 of the '888 patent recites "in a first operation mode, the first and fourth switches are turned on, allowing the output voltage of the regulator to be applied to the ***drain terminal*** of the ***memory cell*** and the voltage different from the output of the regulator to be applied to the gate of the memory cell." The term "the drain terminal of the memory cell" is an obvious drafting error and should be construed to mean "the ***gate*** of the ***voltage applying transistor***." *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1355 (Fed. Cir. 2003) (obvious errors in a claim can be corrected in construing the claim); *Amazon.com, Inc. v. Nokia Technologies Oy*, IPR2024-00921, Paper 11 at 11.

The claim language supports this interpretation. Claim 1, from which claim 5 depends, recites that "the regulator is coupled" to the "input[] of the first … switch,"

whose output is in turn "coupled to a ***gate*** of the ***voltage applying transistor***." As a result of this coupling, when the first switch is "turned on" in claim 5's "first operation mode," it allows the output voltage of the regulator to be applied to the ***gate*** of the ***voltage applying transistor***. EX-1001, Fig. 2; EX-1003, ¶63. Neither claim 1 nor claim 5 provides any connection via which the regulator output in the first operation mode is applied to "the drain terminal of the memory cell," let alone as a result of the first switch being "turned on," as claim 5 recites.

The specification confirms this interpretation. Consistent with Petitioner's construction and mirroring the remaining language of claim 5, the specification describes that, "in the first mode (*e.g.*, during write operation)," "the output of the regulator is supplied to the ***gate*** of the **voltage applying transistor**, to control the voltage applied to the drain side of the memory cell," whereas in "the second mode (*e.g.*, during read operation)" the regulator output is "supplied to the gate of the **memory cell**." EX-1001, 4:61-5:3, Fig. 2.

FIG.2




In other words, in the "first mode," because the regulator "regulat[e]s [the] gate voltage [of the voltage applying transistor], the voltage applied to the drain side of the memory cell 207 [is] controlled." But the regulator does ***not*** apply its output voltage to the drain of the memory cell. *Id.*, 6:21-26, 6:45-53, 7:16-22, 8:11-17, 8:64-9:3. Indeed, ***every embodiment*** shows a regulator (regulator 201) applying its output voltage to the gate of a voltage applying transistor (transistor 205) (*id.*, Figs. 2, 4-7), and there is not a single embodiment where the regulator applies its output voltage "to the drain terminal of the memory cell" (transistor 207). EX-1003, ¶65.

Patent Owner may argue that Figure 2 of the '888 Patent shows applying the output of regulator 201, VPP1, to the drain of the memory cell indirectly, *i.e.*, via booster circuit 208 and transistors 205 and 206. But such an interpretation would be

unsupported because the specification is plain that VPP1 is the output of booster circuit 208, not the output of regulator 201. EX-1001, 6:18-21. Further, if the applicant had intended to claim the booster circuit's voltage being applied to the drain of the memory cell (rather than the regulator's voltage being applied to the drain of the memory cell), claim 5 would have expressly stated so. EX-1003, ¶66. The '888 patent claims explicitly distinguish the output of a booster circuit ("***voltage different from*** the output of the regulator") from the "output of a regulator." EX-1001, 9:35-36 ("an output of the regulator"), 9:61 ("a voltage different from the output of the regulator"), 13:5-7 ("the voltage different from the output of the regulator is an output voltage of a booster circuit"), 13:8-10 ("an output of a booster circuit is coupled to a source terminal of the voltage applying transistor"). Such a distinction would be rendered meaningless if the output of the booster circuit can also be considered an output of the regulator simply because the booster circuit is connected to the regulator. *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be interpreted with an eye toward giving effect to all terms in the claim.").

Accordingly, the Board should construe the first operation in claim 5 to require applying an output of the regulator to the "gate of the voltage applying transistor," not the "drain terminal of the memory cell." Should the Board agree, claim 5 (the only claim affected by this construction) is invalid as discussed in