# EXHIBIT P

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

---

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

---

SK HYNIX, INC.,

Petitioner,

v.

ADVANCED MEMORY TECHNOLOGIES, LLC,

Patent Owner.

---

Case No. IPR2025-01449

U.S. Patent No. 8,593,888

---

# DECLARATION OF SUNIL P. KHATRI IN SUPPORT OF PETITION FOR *INTER PARTES* REVIEW OF U.S. PATENT NO. 8,593,888

These claim limitations generally recite the use of a regulator and the arrangement of switches between the regulator on the one hand, and the voltage applying transistor and memory cell on the other hand.

## VI. PERSON OF ORDINARY SKILL

60. A person of ordinary skill in the art at the time of the ’888 Patent (“POSITA”) would have at least a Bachelor of Science in electrical engineering, computer engineering, or similar fields with courses in integrated circuit design and at least two years of experience in the field of integrated circuit design for memories.

61. As set forth in my Background and Qualifications section above, and in my attached CV, I met and exceeded this definition from before the Critical Date of March 10, 2010, and therefore my opinions expressed in this declaration apply.

## VII. CLAIM CONSTRUCTION

62. Claim 5 of the ‘888 patent recites “in a first operation mode, the first and fourth switches are turned on, allowing the output voltage of the regulator to be applied to the ***drain terminal*** of the ***memory cell*** and the voltage different from the output of the regulator to be applied to the gate of the memory cell.” The term “the drain terminal of the memory cell” is an obvious drafting error and should be construed to mean “the ***gate*** of the ***voltage applying transistor***.” *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1355 (Fed. Cir. 2003) (obvious errors in

a claim can be corrected in construing the claim); *Amazon.com, Inc. v. Nokia Technologies Oy*, IPR2024-00921, Paper 11 at 11.

63. The claim language supports this interpretation. Claim 1, from which claim 5 depends, recites that "the regulator is coupled" to the "input[] of the first … switch," whose output is in turn "coupled to a ***gate*** of the ***voltage applying transistor***." As a result of this coupling, when the first switch is "turned on" in claim 5's "first operation mode," it allows the output voltage of the regulator to be applied to the ***gate*** of the ***voltage applying transistor***. EX-1001, Fig. 2. Neither claim 1 nor claim 5 provides any connection via which the regulator output in the first operation mode is applied to "the drain terminal of the memory cell," let alone as a result of the first switch being "turned on," as claim 5 recites.

64. The specification confirms this interpretation. Consistent with Petitioner's construction and mirroring the remaining language of claim 5, the specification describes that, "in the first mode (*e.g.*, during write operation)," "the output of the regulator is supplied to the ***gate*** of the **voltage applying transistor**, to control the voltage applied to the drain side of the memory cell," whereas in "the second mode (*e.g.*, during read operation)" the regulator output is "supplied to the gate of the **memory cell**." EX-1001, 4:61-5:3, Fig. 2.

FIG.2




65. In other words, in the "first mode," because the regulator "regulat[e]s [the] gate voltage [of the voltage applying transistor], the voltage applied to the drain side of the memory cell 207 [is] controlled." But the regulator does ***not*** apply its output voltage to the drain of the memory cell. *Id.*, 6:21-26, 6:45-53, 7:16-22, 8:11-17, 8:64-9:3. Indeed, ***every embodiment*** shows a regulator (regulator 201) applying its output voltage to the gate of a voltage applying transistor (transistor 205) (*id.*, Figs. 2, 4-7), and there is not a single embodiment where the regulator applies its output voltage "to the drain terminal of the memory cell" (transistor 207).

66. Patent Owner may argue that Figure 2 of the '888 Patent shows applying the output of regulator 201, VPP1, to the drain of the memory cell indirectly,

*i.e.*, via booster circuit 208 and transistors 205 and 206. But such an interpretation would be unsupported because the specification is plain that VPP1 is the output of booster circuit 208, not the output of regulator 201. EX-1001, 6:18-21. Further, if the applicant had intended to claim the booster circuit's voltage being applied to the drain of the memory cell (rather than the regulator's voltage being applied to the drain of the memory cell), claim 5 would have expressly stated so. The '888 patent claims explicitly distinguish the output of a booster circuit ("***voltage different from*** the output of the regulator") from the "output of a regulator." EX-1001, 9:35-36 ("an output of the regulator"), 9:61 ("a voltage different from the output of the regulator"), 13:5-7 ("the voltage different from the output of the regulator is an output voltage of a booster circuit"), 13:8-10 ("an output of a booster circuit is coupled to a source terminal of the voltage applying transistor"). Such a distinction would be rendered meaningless if the output of the booster circuit can also be considered an output of the regulator simply because the booster circuit is connected to the regulator. I understand claims must be interpreted with an eye toward giving effect to all terms in the claim and thus such an interpretation would be disfavored.

67. Accordingly, the Board should construe the first operation in claim 5 to require applying an output of the regulator to the "gate of the voltage applying transistor," not the "drain terminal of the memory cell." Should the Board agree,

claim 5 (the only claim affected by this construction) is invalid as discussed in Grounds 2 and 3. But even if the Board disagrees and finds no construction is needed for claim 5, it would still be invalid as discussed in Grounds 2 through 4.

68. No other express constructions are required to find the '888 Patent claims invalid. To the extent relevant, Petitioner addresses the plain meaning of certain terms in the analysis for the presented Grounds.

## VIII. INVALIDITY ANALYSIS

69. In my opinion, claims 1, 3, 5, 20, and 21 of the '888 Patent are invalid under the following Grounds:

| Ground | Basis | Reference(s) | Claims |
|---|---|---|---|
| 1 | Anticipation | **Tomita** | 1 and 21 |
| 2 | Obviousness | **Tomita** in view of **Im** | 1, 3, 5, 20, and 21 |
| 3 | Obviousness | **Tomita** in view of **Nam** | 1, 3, 5, and 21 |
| 4 | Anticipation | **Nakayama** | 1, 3, 5, and 21 |

70. My understanding of the relevant dates of the four references, which qualify as prior art, is summarized below:

| Reference | Date |
|---|---|
| Tomita | May 25, 1999 (issue date) |
| Im | January 5, 2009 (filing date) |
| Nam | May 13, 2008 (issue date) |
| Nakayama | Aug. 1989 (publication date) |

### A. Ground 1: Tomita Anticipates Claims 1 and 21

#### 1. Overview of Tomita (EX-1004)



Fig. 5. Circuit diagram of column latch and row decoder.

## IX. CONCLUSION

202. I declare that all statements made herein on my own knowledge are true and that all statements made on information and belief are believed to be true, and further, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 or Title 18 of the United States Code.

Respectfully submitted,

Date: August 21, 2025 By: [signature]
Sunil P. Khatri, Ph.D.