[redacted]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ADVANCED MEMORY TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SK HYNIX INC.,<br><br>Defendant. | Civil Action No. 2:24-CV-1078-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF AMT'S OPPOSITION TO DEFENDANT SK HYNIX'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '557 AND '018 PATENTS**

[redacted]

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................1

II. RESPONSE TO STATEMENT OF ISSUES ..........................................................1

III. RESPONSE TO STATEMENT OF FACTS ............................................................2

IV. LEGAL FRAMEWORK ..........................................................................................5

V. ARGUMENT ..........................................................................................................6

A. Genuine Disputes of Material Fact Exist Regarding When Any Product Embodying the Patents Came Into Existence ..........................................7

1. Metadata Shows Post-Critical Date Modifications ....................................7

2. Metadata Predating the Critical Date Contradicts SK hynix's Account ..................................................................................................8

3. Schematic Completion Does Not Establish Product Existence ................10

4. Mr. Cho's Credibility Is a Jury Question .................................................12

B. SK hynix Has Not Proven That the Products It Sold Before the Critical Date Are Identical to the Device in the Produced Schematics ............................13

1. The Sales Invoices Do Not Match the Schematics ..................................13

2. SK hynix Has Not Shown That There Are No Differences......................14

C. SK hynix Has Not Established an On-Sale Bar, Public Use, or Prior Knowledge Under § 102 ....................................................................................16

1. The On-Sale Bar Does Not Apply to Third-Party Sales ...........................16

2. There Is No Public Use Because SK hynix Treated the Invention as a Trade Secret .......................................................................18

3. Sections 102(a) and 102(g) Are Inapplicable for the Same Reasons ...................................................................................................19

D. In the Alternative, AMT Is Entitled to Additional Discovery Under Rule 56(d) ........................................................................................................20

[redacted]

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbott Lab'ys v. Geneva Pharms., Inc.*,
182 F.3d 1315 (Fed. Cir. 1999)....16

*Accenture Global Services GmbH v. Guidewire Software Inc.*,
691 F. Supp. 2d 577 (D. Del. 2010)....11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....5

*Cap Export, LLC v. Zinus, Inc.*,
2022 WL 4376407 (Fed. Cir. Sept. 22, 2022)....14

*Celanese Int'l Corp. v. Int'l Trade Comm'n*,
111 F.4th 1338 (Fed. Cir. 2024)....16, 17

*Celotex v. Catrett*,
477 U.S. 317 (1986)....5

*City of Elizabeth v. American Nicholson Pavement Co.*,
97 U.S. 126 (1877)....17

*Dey, L.P. v. Sunovion Pharms., Inc.*,
715 F.3d 1351 (Fed. Cir. 2013)....18

*Gillman v. Stern*,
114 F.2d 28 (2d Cir. 1940)....20

*Headwater Rsch. LLC v. Samsung Elecs. Co.*,
2025 WL 1164718 (E.D. Tex. Apr. 5, 2025)....11

*Honore v. Douglas*,
833 F.2d 565 (5th Cir. 1987)....5

*Lockwood v. Am. Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997)....19

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (Fed. Cir. 2022)....4, 5, 12

*Navico Inc. v. Garmin Int'l, Inc.*,
2017 WL 3750252 (E.D. Tex. July 28, 2017)....14

*Orion IP, LLC v. Hyundai Motor America*,
605 F.3d 967 (Fed. Cir. 2010)....5

[redacted]

*Parallel Networks Licensing, LLC v. International Business Machines Corp.*,
2017 WL 1045912 (D. Del. Feb. 22, 2017) ....................18

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
396 F. Supp. 3d 851 (N.D. Cal. 2019) ....................11, 14

*Raby v. Livingston*,
600 F.3d 552 (5th Cir. 2010) ....................20

*Scaltech Inc. v. Retec/Tetra, L.L.C.*,
178 F.3d 1378 (Fed. Cir. 1999)....................6, 9

*Schlumberger Tech. Corp. v. BICO Drilling Tools*,
2019 WL 2450948 (S.D. Tex. June 12, 2019) ....................17

*TQP Dev., LLC v. Intuit Inc.*,
2014 WL 2809841 (E.D. Tex. June 20, 2014)....................15, 19

*Wilco Marsh Buggies & Draglines, Inc. v. Weeks Marine, Inc.*,
2025 WL 2399565 (Fed. Cir. Aug. 19, 2025)....................1, 13

*Woodland Trust v. Flowertree Nursery, Inc.*,
148 F.3d 1368 (Fed. Cir. 1998)....................19

*Zacharin v. United States*,
213 F.3d 1366 (Fed. Cir. 2000)....................16

[redacted]

# GLOSSARY

| Patents at-Issue | Asserted Claims |
|---|---|
| U.S. Patent No. 7,777,557 ("'557 Patent") | 1, 2, 4, 7, 9, 10, 11, 12, 14 |
| U.S. Patent No. 7,920,018 ("'018 Patent") | 1, 2, 4, 7, 9, 10 |

| Parties | Abbreviation |
|---|---|
| Advanced Memory Technologies, LLC | AMT |
| SK hynix Inc. | SK hynix |

| Declarations | Abbreviation |
|---|---|
| Declaration of Dr. Martin G. Walker | Walker Decl. |
| Declaration of Andrew Nassar | Nassar Decl. |

[redacted]

## EXHIBITS

| Exhibit[1] | Description |
|---|---|
| A | Cover Pages of ’557 and ’018 Patents |
| B | Excerpts of SK hynix’s Invalidity Contentions (from Ex. 3 to the Motion) |
| C | Screenshots Showing Metadata of SK hynix Schematics and Layout Designs |
| D | Excerpts of SKH_00069744 (SK hynix presentation) |
| E | Excerpts of SKH_00069706 (SK hynix presentation) |
| F | Excerpts of SKH_00054613 (SK hynix presentation) |
| G | Screenshots Showing Metadata of SK hynix-Produced Documents |
| H | Excerpts of SKH_00012400 (SK hynix datasheet) |
| I | Excerpts of SKH_00012748 (SK hynix datasheet) |
| J | Excerpts of SKH_00012636 (SK hynix datasheet) |
| K | Excerpts of SKH_00012586 (SK hynix datasheet) |
| L | Excerpts of SKH_00049826 (SK hynix presentation) |
| M | Excerpts of SKH_00053953 (SK hynix presentation) |
| N | Excerpts of SKH_00054246 (SK hynix presentation) |
| O | Excerpts of SKH_00053172 (SK hynix presentation) |
| P | Excerpts of SK hynix Responses & Objections to AMT First Set of Interrogatories |
| Q | Excerpts of Protective Order (ECF No. 34) |
| R | Annotated Copy of SK hynix’s Exhibit 13 |

[1] Exhibits are attached to, and identified in, the Nassar Declaration.

[redacted]

## I. INTRODUCTION

SK hynix admits that its products practice every single asserted claim of the '557 and '018 Patents. To get around these inescapable infringement problems, SK hynix seeks summary judgment by claiming that its "F90" memory devices invalidate these two patents. Its motion reasons that, because AMT's infringement contentions map certain F90 schematics to the asserted claims, and because SK hynix sold certain other F90 devices before the Critical Date of January 17, 2007, all asserted claims are anticipated.

But SK hynix's argument relies on sleight of hand. It assumes, without proving, that every product sold under the "F90" label is identical to the particular device shown in the schematic library it produced. It assumes that the [redacted] cell it relies on was incorporated into a finished product by December 2004, even though other layers of the same schematic were not completed until mid-2006 and the schematic library metadata shows changes in 2011 and 2025. And it assumes that the products reflected in its sales invoices are the same products depicted in the schematics and layout images it produced, an assumption contradicted by its own documents.

These are the types of disputed factual issues that courts routinely hold preclude summary judgment. A prior art product can anticipate a patent claim only if it "contains each and every limitation of the claim," and the party asserting invalidity must prove this by clear and convincing evidence. *Wilco Marsh Buggies & Draglines, Inc. v. Weeks Marine, Inc.*, 2025 WL 2399565, at *1 (Fed. Cir. Aug. 19, 2025). SK hynix has not done so. The Court should deny the motion.

## II. RESPONSE TO STATEMENT OF ISSUES

AMT reframes SK hynix's stated issues as follows: Whether SK hynix has met its burden of proving, by clear and convincing evidence, that every reasonable jury would conclude that a product embodying the asserted claims of the '557 and '018 Patents was publicly known, in public use, or on sale in the United States before the Critical Date of January 17, 2007.

[redacted]

## III. RESPONSE TO STATEMENT OF FACTS

1. Partially disputed. AMT does not dispute SK hynix's general description of the '557 and '018 Patents as applied to its motion but does dispute SK hynix's characterizations to the extent they purport to limit the claims to the embodiments described in the specification.

2. Partially disputed, to the extent described in Paragraph 1.

3. Undisputed.

4. Partially disputed. AMT does not dispute that SK hynix has argued in its invalidity contentions that the '557 and '018 Patents are invalid in light of the alleged F90 devices, but AMT disputes the merits of that assertion, which is the subject of the instant motion.

5. **Disputed**. SK hynix's assertion that "the F90 devices" are prior art to the '557 and '018 Patents is the issue in dispute. AMT disputes this statement for the following reasons:

(a) SK hynix conflates different products. SK hynix refers to "the F90 devices" as if all products sold under the F90 designation are identical. They are not. The schematic library SK hynix produced ([redacted] specifically corresponds to "F90 Devices with a multi-level cell NAND flash memory and 4G-bit density." Cho Decl. ¶ 5.

(b) SK hynix has not proven that the schematics are representative of products sold or in public use in this country before the Critical Date. SK hynix produced schematics and layout images from the [redacted] library. But SK hynix has presented no evidence that these schematics from the [redacted] library are representative of all F90 products, or that the specific circuit feature it relies on (the [redacted] cell) was incorporated into products sold before the Critical Date.

(c) The December 15, 2004, date is disputed. SK hynix claims that the [redacted] cell was completed by December 15, 2004, based on a date stamp on the schematic. AMT disputes this date for multiple reasons, as described below: (i) other layers of the same schematic

[redacted]

show later dates, including February 28, 2006, for the top-level cell; (ii) the layout images show a completion date of May 2, 2006; and (iii) the library metadata reflects modifications as late as May 31, 2011, and even 2025. *See infra* Section V.A.1–2. These inconsistencies create genuine disputes of material fact as to when the schematics were actually finalized.

6. **Disputed.** SK hynix cites sales invoices and internal sales records as evidence that F90 devices were sold before the critical date. AMT disputes that this evidence establishes what SK hynix claims:

(a) The invoices do not match the schematics. The schematics SK hynix produced are for 4GB multi-level cell ("MLC") devices. The invoices SK hynix cites, however, reflect sales of F90 devices with different densities (*e.g.*, 1GB, not 4GB) and different cell types (single-level cell ("SLC"), not MLC). *See infra* Section V.B. SK hynix has not presented any invoice showing the sale of a 4GB MLC F90 device before the Critical Date.

(b) If the schematics were complete in December 2004, as SK hynix assumes, but the layout images were not complete until May 2006, no finished product incorporating those designs could have been manufactured and sold in the United States before the Critical Date. SK hynix has offered no evidence of the fabrication timeline or shipping records to bridge this gap. SK hynix's own documents show that it is highly unlikely, if not impossible, to proceed from a completed layout in May to a fabricated and sold device by January. This evidentiary gap is fatal to SK hynix's motion.

(c) The spreadsheet depicted in Exhibit 14 of SK hynix's motion does not purport to describe U.S. sales of devices bearing the schematics SK hynix produced, and as discussed below, AMT disputes that the devices identified in the Exhibit as sold in 2006 or before the January 17, 2007, Critical Date could contain the schematics and layouts of the device depicted.

[redacted]

7. Undisputed.

8. **Disputed**. SK hynix asserts that the schematics and layout images are "original" documents from its design database. AMT disputes this characterization:

(a) The metadata contradicts the "original" characterization. If the documents were "original" and unmodified since December 2004, the metadata would consistently show that date. Instead, the metadata shows a range of dates, including dates years *after* the critical date (May 31, 2011) and even a date in 2025. *See infra* Section V.A.3. These discrepancies raise questions about when the schematics were complete, whether the documents have been altered, or whether they accurately reflect the state of the design as of December 2004.

(b) SK hynix's declarant, Mr. Cho, claims that the date markings are "automatically updated when an engineer clicks 'check & save.'" Cho Decl. ¶ 8. If credited, this explanation is consistent with AMT's assertion that the evidence shows the schematics were continually modified over several years. In any event, Mr. Cho's statements regarding the provenance of the schematics should be assessed by a jury because he is not a disinterested witness. Mr. Cho possessed copies of the asserted patents in his files as early as 2017, making him a central figure in relation to AMT's willful infringement allegations. *See infra* Section V.A.4.

(c) AMT disputes the assertions in Footnote 3 relating to the alleged "F70" devices because SK hynix has similarly presented insufficient evidence that any such product embodying the '557 and '018 Patents existed before the Critical Date, let alone renders the patents invalid.

9. **Disputed**. SK hynix asserts that native technical materials are "original" documents from its design database. AMT disputes this characterization, as described in Paragraph 8.

[redacted]

10. Undisputed

11. Undisputed.

12. **Disputed**. SK hynix refers to "the F90 devices" as if all products sold under the F90 designation are identical. They are not. *See* Paragraph 5.

13. **Disputed**. SK hynix's invalidity contentions rely on a different schematic ([redacted]). Its motion conflates one specific cell with all F90 products. There is no evidence that the [redacted] cell in the [redacted] library is the same as the booster circuit in any F90 variant SK hynix actually sold before the Critical Date.

14. Undisputed.

## IV. LEGAL FRAMEWORK

Patents are presumed valid. 35 U.S.C. § 282. Accordingly, "[t]he burden of proof to invalidate … patent claims is a heavy one—clear and convincing evidence—and it is a burden that rests squarely on" the party contesting validity. *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1366 (Fed. Cir. 2022) (citing *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 95 (2011)). At summary judgment, the challenge is "even greater: to show that no reasonable factfinder, taking the evidence in the light most favorable to [the non-moving party], could do anything other than find clear and convincing evidence of anticipation." *Id.*

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[redacted]

Summary judgment "is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). "It is not the function of the trial judge . . . to weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Id.* (citing *Anderson*, 477 U.S. at 242).

## V. <u>ARGUMENT</u>

SK hynix has not proven by clear and convincing evidence that any product embodying the asserted claims of the '557 and '018 Patents was sold, publicly used, or publicly known in the United States before the Critical Date of January 17, 2007.[2] The Court should deny SK hynix's motion for three reasons: (1) genuine disputes of material fact exist regarding when any product embodying the claimed inventions came into existence; (2) SK hynix has not proven that the products it sold before the Critical Date are identical to the device depicted in the schematics it points to; and (3) SK hynix has not established an on-sale bar, public use, or prior knowledge under § 102 because it is a third party and because it treated its product designs (including schematics) as trade secrets that were never accessible to the public. Even if the Court were inclined to consider the motion, AMT is entitled to additional discovery under Rule 56(d) and respectfully requests the Court defer consideration of the motion until the close of fact and expert discovery.

---

[2] "The critical date is defined as the date one year prior to the filing date of the patent application." *Orion IP, LLC v. Hyundai Motor America*, 605 F.3d 967, 974 (Fed. Cir. 2010); *see also Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 2018 WL 11351583, at *3 (E.D. Tex. Dec. 20, 2018) ("The 'critical date' for assessing the validity of a patent is the date that falls one year before the date the patent application was filed or the date a patent application claims priority."); Ex. A, at 1–2 ('557 Patent showing January 17, 2008, filing; '018 Patent identifying '557 Patent). Pre-AIA § 102 applies.

[redacted]

### A. <u>Genuine Disputes of Material Fact Exist Regarding When Any Product Embodying the Patents Came Into Existence</u>

To establish an on-sale or public use bar, SK hynix must prove by clear and convincing evidence that a product embodying "each of the limitations of the claim" was sold or in public use before the Critical Date of January 17, 2007. *See Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999). SK hynix's theory centers on the [redacted] cell, which it claims was created on December 15, 2004. *See* Mot., at ¶ 5. But that is only one component of a multi-layered semiconductor design. *See* Walker Decl., ¶ 14. The nanoscopic, transistor-level features depicted in the [redacted] cell cannot practically be "sold" by themselves. *Id.* at 13. The schematic cell must first be incorporated into memory cells, which are further incorporated into finished memory devices. It is those devices that are sold as completed products, so SK hynix must trace the [redacted] cell to a completed memory device. It has not (and cannot) do so.

SK hynix fails to meet this burden for four reasons: (1) metadata shows the schematics were modified after the Critical Date; (2) the metadata predating the Critical Date contradicts SK hynix's December 2004 theory; (3) SK hynix offers no evidence that a finished product embodying the layout and schematics was manufactured and sold before January 17, 2007; and (4) Mr. Cho's credibility, on which SK hynix's argument depends, is unreliable enough to warrant a jury's consideration.

#### 1. **Metadata Shows Post-Critical Date Modifications**

The most significant evidence contradicting SK hynix's timeline comes from metadata showing design changes after the Critical Date itself. The schematic library from which the [redacted] cell was retrieved (the [redacted] library) shows a last-modified date of May 31, 2011, more than four years after the Critical Date. *See* Ex. B (excerpts of SK hynix invalidity contentions), at 3. SK hynix's motion is conspicuously silent on this date, even though it appears

[redacted]

in its own invalidity contentions. *Id.* Because the library containing the schematics was still under revision in 2011, SK hynix cannot establish by clear and convincing evidence—especially when viewed in a light most favorable to AMT—that a finished product embodying those schematics existed before January 2007. This alone precludes summary judgment in SK hynix's favor.

[redacted]

**Screenshot of [redacted] library from SK hynix contentions (Ex. B, at 3) (blue boxes by AMT; red by SK hynix)**

Additional metadata within the library confirms that the schematics were still under development well after the Critical Date. One folder within the [redacted] library, the "fdesign" folder, shows a modification date of May 21, *2025*. *Id.* Other folders show dates of December 24, 2008, and September 21, 2007. *Id.* These dates refute SK hynix's claim that the schematics were complete in December 2004 and show that the library SK hynix relies upon was being actively modified for years after January 2007, raising serious questions about whether the schematics in their current form bear any resemblance to whatever existed in December 2004.

2. **Metadata Predating the Critical Date Contradicts SK hynix's Account**

Even setting aside the post-2007 dates in SK hynix's metadata, SK hynix's own documents show that the design was being continuously revised through at least May 2006. For example, the

[redacted]

top-level cell of the schematic hierarchy ([redacted]) is dated February 28, 2006. *See id.* at 4. Intermediate schematic layers show dates of January 1, 2006, and May 1, 2006. *See id.* at 83–84. Metadata for files within the [redacted] cell shows modifications on March 21, 2005; July 9, 2005; and March 7, 2006. *See* Ex. C at 2–3 (schematic last-modified dates); Walker Decl., ¶ 7–8. And the cell layout, an essential component of any manufacturable design, was not complete until at least May 2, 2006 according to its last-modified date. *See* Ex. C at 4 (layout last-modified metadata); Walker Decl., ¶ 10–11. These dates confirm the design was a work in progress throughout 2005 and into 2006—and certainly far from being a finished product in December 2004.

[redacted]

**<u>Screenshots from SK hynix's Contentions (Ex. B, at 4, 83) (blue boxes by AMT)</u>**

The limited evidence SK hynix has presented supports AMT. Its declarant Mr. Cho asserts that the date markings "are automatically updated when an engineer clicks 'check & save' . . . to capture the last-modified date of the schematics." Cho Decl., ¶ 8. By that logic, if timestamps are automatically generated when an engineer saves a file, then the 2011 date on the library, the 2006 dates on the schematic top-level cell, and the 2025 date on the fdesign folder must each represent actual engineering activity on those dates. On Mr. Cho's own account, the schematics were being actively modified for years after December 2004, including well beyond the Critical Date.

[redacted]

### 3. Schematic Completion Does Not Establish Product Existence

To the extent SK hynix points to [redacted] cell metadata suggesting the layout was complete by May 2, 2006 and attempts to argue that this pre-Critical Date information weighs in its favor, that argument also fails. SK hynix's theory would require finding that a finished product embodying those schematics (*i.e.*, embodying "each of the limitations of the claim") was manufactured, packaged, shipped, and sold in the United States within the short period of time between May 2006 and the January 2007 Critical Date. *See Scaltech*, 178 F.3d at 1383. But, as discussed below, SK hynix's own internal design documentation shows that these processes typically require many months. SK hynix has offered no evidence that these steps could have been completed in that short of a timespan, let alone that they actually were. This evidentiary gap is fatal to SK hynix's motion.

Between the completion of a schematic and the sale of a product in the United States, a series of manufacturing steps must occur: the layout and schematics must be validated by engineers; photolithography masks must be created from the validated designs; silicon wafers must be fabricated using those masks; the fabricated dies must be tested and packaged into finished memory products; and those products must be sold, shipped, and delivered to customers in the United States. *See* Walker Decl., ¶ 12–13. SK hynix has offered no evidence regarding when, or even whether, any of these steps occurred for any product containing the [redacted] cell.

In fact, SK hynix's own documents establish that its standard product development cycle spans multiple phases and requires well over a year from design completion to customer sample production. [redacted] *See* Ex. D

[redacted]

(SKH_00069744), at *9792–9799. [redacted]. *See* Walker Decl., ¶ 12–13.

SK hynix's DRAM Development Workflow documentation further confirms that the timeline from design completion to customer sample qualification typically requires more than a year. [redacted] This evidence directly contradicts any suggestion that SK hynix could have completed design, fabrication, packaging, testing, and delivery to U.S. customers within seven months of the May 2006 layout completion date (assuming that was when the layout was completed). So, even if a schematic had been finalized before the Critical Date—which the evidence suggests is not the case because of the metadata showing changes after the Critical Date—SK hynix has presented no evidence that a finished product embodying that schematic was manufactured and sold in the United States before January 17, 2007.

These factual issues preclude summary judgment. Courts routinely deny summary judgment where, as here, metadata evidence is internally inconsistent and fails to establish when a product came into existence. In *Accenture Global Services GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 590–91 (D. Del. 2010), the court denied summary judgment where metadata raised questions about whether the prior art document existed in its current form as of the claimed

[redacted]

date. And just last year, this Court denied a summary judgment motion in a similar situation because the defendant's evidence did not "demonstrate clearly when [the alleged prior art] became available and its sources can plausibly contradict each other." *Headwater Rsch. LLC v. Samsung Elecs. Co.*, 2025 WL 1164718, at *2 (E.D. Tex. Apr. 5, 2025), *report and recommendation adopted*, 2025 WL 1160806 (E.D. Tex. Apr. 20, 2025).

SK hynix's evidence suffers from the same defects. It relies on a December 2004 date for one component of a multi-layered design while ignoring: (1) dates from 2007, 2008, 2011, and even 2025 within the same library; (2) later dates on other layers of the same schematic; and (3) a complete absence of evidence connecting any schematic to products actually sold before the Critical Date. These disputed factual questions about the dating and provenance of the [redacted] cell preclude summary judgment.

4. **Mr. Cho's Credibility Is a Jury Question**

Summary judgment is also inappropriate because SK hynix's argument depends heavily on a declaration from an engineer named Hyunchul Cho, whose credibility a jury should be allowed to evaluate.

Mr. Cho is not a disinterested witness. SK hynix has recently produced evidence showing that Mr. Cho possessed copies of three of the Asserted Patents (including the '557 and '018 patents at issue here) in his files as early as 2017. *See* Ex. G (documents and metadata produced by SK hynix). Mr. Cho's possession of the patents is significant not only as evidence of willful infringement, but also because it reveals that SK hynix, and Mr. Cho personally, face substantial exposure if these patents are found valid and infringed.

The Court should deny summary judgment to allow a jury to assess Mr. Cho's credibility, particularly with respect to statements he offers regarding the provenance and dates of the schematics. His personal connection to SK hynix's willful infringement exposure presents a

[redacted]

sufficient motive that a jury should be allowed to assess. "[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant['s] witnesses." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004); *see also Mosaic Brands*, 55 F.4th at 1365 (reversing grant of summary judgment where credibility issues and inconsistencies in the movant's documentary evidence created genuine disputes of material fact).

### B. <u>SK hynix Has Not Proven That the Products It Sold Before the Critical Date Are Identical to the Device in the Produced Schematics</u>

Even setting aside the dating issues, SK hynix's motion fails for a separate reason: it has not shown that the products it sold before the Critical Date are the same as the 4GB MLC device depicted in the [redacted] library. "A prior art product can only anticipate a patent claim if it contains each and every limitation of the claim." *Wilco Marsh*, 2025 WL 2399565, at *1.

#### 1. The Sales Invoices Do Not Match the Schematics

SK hynix produced schematics and layout images from a single library—[redacted] which Mr. Cho confirmed is specifically "for the F90 Devices with a multi-level cell NAND flash memory and 4G-bit density." Cho Decl., ¶ 5; Walker Decl., ¶ 15. But the sales invoices SK hynix cites reflect sales of *different* F90 devices with different densities (*i.e.*, storage capacity) and types. Most of the invoices relate to devices with entirely different densities in the first place, such as invoice SKH_00012685, which shows the sale of a 1GB SLC device—not a 4GB MLC device. *See* Ex. R (annotated copy of SK hynix Exhibit 13, identifying density and SLC/MLC of sold devices). The only 4GB F90 products SK hynix has identified in its pre-Critical Date sales records appear to be SLC devices, not MLC devices. *See id.*, at *12688–91; 93; 95; 96. *See* Exs. H (SKH_00012400), at 2445 (identifying "F" products, such as HY27U**<u>F</u>**081G2A, as single-level

[redacted]

cell); I (SKH_00012748), at *2791 (same for "S" products); J (SKH_00012636), at *2684 (same for "H" products); K (SKH_00012586), at *2635 (same for "G" products)).

SK hynix's motion does not mention, let alone address, these differences. Moreover, its *own* documentation shows that these differences are material and significant. *See* Exs. L (SKH_00049826), at *9868, *9572–74 ([redacted]); M (SKH_00053953), at *3955 ([redacted]); N (SKH_00054246), at *4250, *4253 ([redacted]); O (SKH_00053172), at *3216, *3222, *3229 ([redacted]); *see also* Walker Decl., ¶ 16.

2. **SK hynix Has Not Shown That There Are No Differences.**

SK hynix has presented no evidence that the [redacted] cell in the [redacted] library is the same as the booster circuit in any other F90 variant it actually sold before the Critical Date. As an initial matter, "F90" is a broad term that refers to NAND products manufactured at the 90-nanometer pitch (*i.e.*, using a certain type of process node). *See* Ex. P (SK hynix Interrogatory Resps.), at 12 (identifying "[redacted] Ex. B, at 2 (noting F90 is "[redacted] As this Court has recognized, when a defendant asserts that its products are invalidating prior art, it is the defendant's burden "to show there aren't any relevant differences" between the asserted prior art (here, the schematics) and the products alleged to invalidate the patent (F90 sales). *Navico Inc. v. Garmin Int'l, Inc.*, 2017 WL 3750252, at *4 (E.D. Tex. July 28, 2017), *report and recommendation adopted*, 2017 WL 3764213 (E.D. Tex. Aug. 29, 2017).

In *Navico*, this Court granted summary judgment in favor of *the patentee* on validity because the accused infringer had not shown that a product sold in 2002 had the same characteristics as shown in a 2007 operating manual, finding that "the connection between the 2002 sale and the 2007 Manual is too tenuous to support a prior-sale contention under § 102." *Id.*

[redacted]

at *5. The same logic applies here: SK hynix cannot bridge the gap between the schematics it produced and the products it sold merely by asserting that they all carry the "F90" designation.

The Federal Circuit's decision in *Cap Export, LLC v. Zinus, Inc.*, 2022 WL 4376407 (Fed. Cir. Sept. 22, 2022), is also on point. There, the court reversed a grant of summary judgment because there were "material factual disputes regarding whether the on-sale product anticipates the asserted claims" because the assembly instructions for one model of a bed (the alleged prior art) did not necessarily apply to a different model (the on-sale product). *Id.* at *1, *4; *see also Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 881 (N.D. Cal. 2019) (denying summary judgment because moving party's anticipation argument was "missing a crucial evidentiary foundation, namely that the datasheet and schematics represent the product as sold").

The facts here are also similar to those in *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 2809841 (E.D. Tex. June 20, 2014). There, the parties did not dispute that a product ("Notes") incorporating an encryption algorithm ("RC4") met all elements of the asserted claim, but they did dispute whether a Notes product *incorporating RC4* was on sale or in public use before the critical date. *Id.* at *2. Because the non-moving plaintiff "pointed to evidence that whatever was sold" before the critical date "did not include the rights to the RC4 source code," summary judgment was inappropriate: "a reasonable jury could find that the sale was not the sale of a product that contained each element of the disputed claims of the" patent. *Id.* at *3.

If SK hynix had produced (or if it later does produce) an invoice for the 4GB MLC product, it must still reckon with the date discrepancies above and show that the schematics were embodied in the products sold before the Critical Date. As discussed, the earliest possible date—ignoring critical pieces of conflicting evidence—for the F90 schematic to have been completed is May 2, 2006, because that is the date the layout images were allegedly complete. SK hynix would need to

[redacted]

show, by clear and convincing evidence, that there is no genuine dispute about whether those schematics were sufficient to complete the design process, then proceed to fabrication, and then make their way into the United States within just a few months. *See supra* Section V.A.3. As discussed above, SK hynix's own documentation suggests that such an expedited timeline is impractical, let alone that SK hynix actually met that timeline here.

### C. SK hynix Has Not Established an On-Sale Bar, Public Use, or Prior Knowledge Under § 102

SK hynix has not proven by clear and convincing evidence that *every* reasonable jury would conclude that the schematics were complete before the Critical Date and that the products it sold match those schematics. But even if it had, SK hynix's invalidity arguments under § 102 would still fail for three separate reasons.

First, the on-sale bar does not apply because SK hynix—a third party, not the inventor—is the party that allegedly sold products before the Critical Date, and third-party sales do not trigger the on-sale bar. Second, there was no public use because SK hynix treats its schematics and circuit designs as trade secrets, meaning the public could not discern the claimed invention from any products that were sold. Third, for the same reasons, §§ 102(a) and 102(g) do not apply: the invention was never "known" to the public under § 102(a), and SK hynix's deliberate concealment of the invention as a trade secret precludes reliance on § 102(g).

#### 1. The On-Sale Bar Does Not Apply to Third-Party Sales

As a threshold matter, the on-sale bar should not apply because the party that allegedly made the invalidating sales is SK hynix, the accused infringer, not the inventor.[3] The on-sale bar

[3] Some earlier Federal Circuit decisions have indicated that third-party sales can trigger the on-sale bar. *See, e.g.*, *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000); *Abbott Lab'ys v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999). However, more recent case law, as discussed above, has diverged from this view.

[redacted]

is designed to prevent an inventor "from extending a patent monopoly beyond the statutory term by commercially exploiting an invention *prior* to seeking a patent." *Celanese Int'l Corp. v. Int'l Trade Comm'n*, 111 F.4th 1338, 1343 (Fed. Cir. 2024) (emphasis in original) (citation omitted).

The Federal Circuit has recognized distinctions between inventors' and third parties' sales when it comes to the on-sale bar. In *BASF Corp. v. SNF Holding Co.*, the court affirmed that "an *inventor's* commercial exploitation of his invention before the critical date" can give rise to an on-sale bar, but "such exploitation by a *third party* does not." 955 F.3d 958, 968 (Fed. Cir. 2020) (emphases added). Similarly, in *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, the Federal Circuit held that a third party's secret use of a process, and subsequent sale of products made by that process, did not create invalidating prior art under § 102(b). *See* 721 F.2d 1540, 1550 (Fed. Cir. 1983). The court explained that "[a]s between a prior inventor who benefits from a process by selling its product but suppresses, conceals, or otherwise keeps the process from the public, and a later inventor who promptly files a patent application from which the public will gain a disclosure of the process, the law favors the latter." *Id.* This view has found support among district courts too. *See Schlumberger Tech. Corp. v. BICO Drilling Tools*, 2019 WL 2450948, at *9 (S.D. Tex. June 12, 2019) (concluding that "sale[] of a product that discloses the invention by a third party" should be "analyzed under the public use prong" rather than the on-sale bar). Under this approach, a third-party sale, without more, does not bar an inventor obtaining a patent; there must be some additional showing that the sale resulted in public use.

The policy rationale confirms that the on-sale bar should not apply here. The Supreme Court has explained that the on-sale bar exists to prevent an inventor from "attempt[ing] to use [the invention] for a profit" before the filing date, thereby extending the patent monopoly beyond its statutory term. *See City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 137 (1877).

[redacted]

Here, the inventor never commercially exploited the invention before the Critical Date, and SK hynix's sales, even if they occurred, did not extend the patent term by a single day.

For these reasons, the Court should decline to apply the on-sale bar based solely on SK hynix's alleged third-party sales. At minimum, genuine disputes of material fact exist regarding whether any sale occurred before the Critical Date and whether any such sale resulted in a public disclosure—issues that preclude summary judgment.

### 2. There Is No Public Use Because SK hynix Treated the Invention as a Trade Secret

SK hynix is similarly unable to establish a public-use bar because the claimed features of the asserted patents were never accessible to the public. The public-use bar is designed to "discourag[e] the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available." *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013) (quoting *Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192, 1198 (Fed. Cir. 1994)). But where, as here, the invention was never disclosed to the public, there is no public reliance interest to protect.

The claimed features of the '557 and '018 Patents relate to the internal circuit architecture of a memory device. These are nanoscopic details that are not visible or discernible to buyers or the general public. As the Federal Circuit has explained, "a reasonable jury could conclude that if members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the allegedly invalidating prior art, the public has not been put in possession of those features." *Dey*, 715 F.3d at 1359.

SK hynix has maintained these schematics and design files in its confidential design databases and, to this day, treats them as proprietary trade secrets. *See* Ex. Q (Protective Order), at 4–7. SK hynix does not disclose the internal circuit architecture of the [redacted] cell to the

[redacted]

public, and the nanoscopic circuit features within a semiconductor chip cannot be observed, measured, or reverse-engineered without specialized equipment and expertise. *See* Walker Decl., ¶ 14. That is insufficient for public use. *See W.L. Gore*, 721 F.2d at 1549–50 (third party's secret use of a process did not create public use where the process was treated as confidential and the public could not discern it from the product); *cf. Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, 2017 WL 1045912, at *9 (D. Del. Feb. 22, 2017) (use of technology did not constitute public use where the defendant "obscured the inner workings" such that public could not determine how it worked). Because SK hynix's public use arguments are inconsistent with its continuing treatment of its schematics as trade secrets, the Court should reject its argument.

3. **Sections 102(a) and 102(g) Are Inapplicable for the Same Reasons**

To the extent SK hynix relies on § 102(a) or § 102(g), despite its failure to substantively address those subsections, the Court should reject its arguments for the same reasons as above.

Section 102(a) requires the invention to have been "known or used by others in this country" before the date of invention. But this provision similarly requires proof that the claimed invention was accessible to the public. *See Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997). Where an asserted prior use is by a third party (here, the accused infringer itself), the use and knowledge must be "available to the public." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998). SK hynix's internal schematics and layouts were not available to the public. They were, and remain, closely guarded trade secrets.

SK hynix treats its schematics and circuit designs as proprietary and highly confidential trade secrets. *See* Ex. Q, (Protective Order), at 4–7. The schematics at issue were maintained in SK hynix's confidential design databases, away from the public. The fact that products *containing* these circuit features were sold does not mean the *inventive features themselves*—the particular arrangement of boosting cells and well bias generation—were "known" to the public within the

[redacted]

meaning of § 102(a). *See BASF*, 955 F.3d at 965 ("Prior knowledge or use that is not accessible to the public 'upon reasonable inquiry,' confers no benefit on the public.") (internal citation omitted).

Section 102(g) is likewise inapplicable. Under that provision, a prior invention cannot be used to invalidate a patent if the prior inventor "abandoned, suppressed, or concealed" the invention. 35 U.S.C. § 102(g)(2). Treating an invention as a trade secret is relevant to the "concealment" inquiry. *See TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, 120 F. Supp. 3d 600 (E.D. Tex. 2015) (noting that confidentiality and "trade secret designations" raised a genuine disputed with respect to concealment). *Cf. Gillman v. Stern*, 114 F.2d 28, 31 (2d Cir. 1940) (Learned Hand, J.) (holding that a secret prior invention could not be used to invalidate a later patent). SK hynix's deliberate decision to maintain the [redacted] cell design as a trade secret, rather than publicly disclose it or seek patent protection, constitutes concealment that precludes reliance on § 102(g). Moreover, § 102(g)(2) applies only to inventions "made in this country." SK hynix has offered no evidence that any alleged prior invention was made in the United States. *See* 35 U.S.C. § 102(g)(2).

### D. <u>In the Alternative, AMT Is Entitled to Additional Discovery Under Rule 56(d)</u>

To the extent the Court believes this issue can be resolved at summary judgment, AMT respectfully requests that it defer consideration until fact and expert discovery are complete, pursuant to Federal Rule of Civil Procedure 56(d). "A request to stay summary judgment under Rule 56[d] must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citation omitted).

AMT satisfies this standard. SK hynix filed this motion before the substantial completion deadline of fact discovery had even passed and *months* before the close of fact discovery. There

[redacted]

are specific, identifiable facts that remain to be discovered that bear directly on the pending motion, including:

**First**, AMT has not yet deposed SK hynix witnesses, including Mr. Cho and Mr. Kim, and its examination of Dr. Apsel in February was conducted in relation to her claim construction declaration. *See* Nassar Decl., at ¶ 3. Cross-examination of these witnesses is essential to testing the credibility and reliability of their declarations, particularly regarding the dating of the schematics and the relationship between the schematics and the products sold. *Id.*, at ¶ 5; *see TypeRight*, 374 F.3d at 1158 (summary judgment inappropriate where credibility questions exist).

**Second**, AMT requires additional discovery into the provenance and modification history of the F90 schematics and the design database from which they were extracted, including analysis of the metadata to determine whether the schematics were altered after the alleged December 2004 date. AMT has been in contact with SK hynix regarding deposition dates, but the parties have yet to schedule fact witness depositions. *See* Nassar Decl., at ¶ 4–5.

**Third**, AMT requires additional discovery into the specific products sold under the F90 designation before the Critical Date, including whether those products were manufactured using the [redacted] schematic library or a different design.

Date: March 10, 2026

Respectfully submitted,

*/s/ Justin Nelson*

Justin A. Nelson – Lead Counsel
Texas State Bar No. 24034766
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jnelson@susmangodfrey.com

Kalpana Srinivasan

[redacted]

California State Bar No. 237460
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com

Ian M. Gore
Washington State Bar No. 54519
Kemper Diehl
Washington State Bar No. 53212
Bianca Rey
Washington State Bar No. 62422
**SUSMAN GODFREY LLP**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
igore@susmangodfrey.com
kdiehl@susmangodfrey.com
brey@susmangodfrey.com

Ravi Bhalla
New York State Bar No. 5748223
Andrew Nassar
New York State Bar No. 6162226
Stuart E. Pollack
New York State Bar No. 2952984
**SUSMAN GODFREY LLP**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
rbhalla@susmangodfrey.com
anassar@susmangodfrey.com
spollack@susmangodfrey.com

*Of Counsel:*
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea L. Fair
Texas State Bar No. 24078488
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604

[redacted]

Telephone: (903) 757-6400
Facsimile: (903) 757-2323
claire@millerfairhenry.com
andrea@millerfairhenry.com

*Attorneys for Plaintiff AMT*

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email pursuant to Local Rule CV-5(a)(7) on March 10, 2026.

*/s/ Justin Nelson*
Justin A. Nelson

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Justin Nelson*
Justin A. Nelson